Jonathan KANFER, on behalf of himself, all others similarly situated, and the general public, Plaintiff,

v.

PHARMACARE US, INC., a Delaware corporation, Defendant.

Case No. 15–cv–0120–H–JLB.

United States District Court,
S.D. California.

Signed Nov. 4, 2015.

Ronald Marron, Beatrice Skye Resendes, William Bradford Richards, Jr., Law Offices of Ronald A. Marron, APLC,

Gregory S. Weston, The Weston Firm, David Elliot, San Diego, CA, for Plaintiff.

Lawrence E. Butler, Jared Lee Palmer, Seyfarth Shaw LLP, San Francisco, CA, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND STRIKE

MARILYN L. HUFF, District Judge.

On July 6, 2015, Defendant Pharmacare US, Inc. filed a motion to dismiss and strike portions of Plaintiff Jonathan Kanfer's first amended complaint. (Doc. No. 32.) Plaintiff opposed the motion on September 14, 2015. (Doc. No. 33.) Defendant replied on September 21, 2015. (Doc. No. 34.) On September 23, 2015, the Court took the matter under submission pursuant to Local Civil Rule 7.1(d)(1). (Doc. No. 35.) On September 24, 2015, the Court requested briefing on whether Plaintiff, a Florida resident who bought the product that is the subject of this suit in Florida, can assert claims under California's consumer protection laws in light of *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir.2012). (Doc. No. 36.) Defendant filed its brief on October 12, 2015. (Doc. No. 37.) Plaintiff filed his brief on October 26, 2015. (Doc. No. 40.) Defendant replied on November 2, 2015. (Doc. No. 41.) For the reasons set forth below, the Court denies Defendant's motion.

### Background

This case is a putative nationwide consumer class action regarding Defendant's over-the-counter product IntenseX. Plaintiff filed his initial complaint on January 20, 2015. (Doc. No. 1.) He filed the operative first amended complaint ("FAC") on June 19, 2015. (Doc. No. 31.) This Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). (*Id.*

¶ 6.) Plaintiff seeks to litigate on behalf of all persons in the United States who bought IntenseX primarily for personal, family, or household use and not for resale since January 1, 2004. (*Id.* ¶ 74.) He alleges causes of action for unlawful, unfair, and fraudulent business practices under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.Code § 17200 et seq.; violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof.Code § 17500 et seq.; violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ.Code § 1750 et seq.; breach of express warranty; breach of the implied warranty of merchantability; and violation of the federal Magnuson–Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq. (FAC ¶¶ 85–135.)

According to Plaintiff, the name "IntenseX" implies that the product will enable intense sex. (*Id.* ¶ 16.) The label contains the following statements: "Sexual Power and Performance," "IntenseX is designed to intensify your endurance, stamina, and sexual performance," "This fast acting formula quickly dissolves in the body releasing an energy packed blend of potent herbal extracts," "Achieve peak performance to maximize the experience when you want it most," "Laboratory Quality Tested," "Proprietary Stamina Blend," and "Produced using the highest manufacturing standards." (*Id.* ¶¶ 17, 64.) The ingredients are calcium, guarana, muira puama, catuaba, ginkgo biloba, avena sativa, cordyceps, ashwaganda, tribulus terrestris, American ginseng, Korean ginseng, ginger, cinnamon, nutmeg, and cayenne. (*Id.* ¶ 19.)

The IntenseX website features pictures of amorous couples and claims the product "WORKS SO FAST YOU MAY NOT MAKE IT HOME," and the "FAST ACTING FORMULA ... is the only formula that works within minutes to give you the powerful, sexual energy you need to make a 'long lasting' impression." (*Id.* ¶ 56.) The website asserts, regarding ginseng: "Use if you suffer from coldness rheumatism, cold and flu, frigidity and impotence." (*Id.* ¶ 42.) The website also states that "Empirical evidence suggests that tribulus may help impotence in men and diminished libido in both sexes." (*Id.* ¶ 43.)

Plaintiff alleges that he bought IntenseX for $9.99 on at least four occasions in Palm Beach, Florida, between October 2013 and January 2014. (*Id.* ¶ 62.) When deciding to buy the product, he relied on the label and believed IntenseX had powerful aphrodisiac qualities that would improve his sexual power and performance. (*Id.* ¶¶ 63–65.) But the product did not deliver the promised benefits. (*Id.* ¶ 66.) Moreover, he asserts, there is no evidence that the ingredients provide the claimed benefits, which is an unfair and unreasonable risk considering that the product provides no benefits. (*Id.*)

Plaintiff supports his claims with several reports. According to New York University's Longone Medical Center, there is no real evidence that herbs offer any benefits for increasing sexual performance or desire, and there are no reliable scientific studies to establish that ginkgo biloba improves sexual function. (*Id.* ¶ 23.) In fact, at least two studies have shown that ginkgo failed to improve sexual function to any greater extent than placebo. (*Id.*) According to another article, ginkgo has been proven to be ineffective in improving sexual function. (*Id.* ¶ 24.) And, according to a third article, evidence supporting a role for muira puama in sexual health is limited, and its widespread use in supplements for sexual health is not supported. (*Id.* ¶ 25.) The third article also reports that the effect of tribulus terrestris on human sexual response has not been well documented, guidelines and dosages are not clear, and the reason for its use in supple-

ments purporting to provide sexual benefits is not strongly supported on the basis of scientific evidence. (*Id.* ¶ 26.) Further, according to the University of Maryland Medical Center, Asian ginseng is widely believed to boost sexual performance, but there aren't many studies to back that up. (*Id.* ¶ 27.) While one South Korean study concluded that taking ginseng orally improved all domains of sexual function, it failed to mention that the improvement was no better than the effects of a placebo, except for with respect to premature ejaculation. (*Id.*) Plaintiff asserts further that avena sativa, guarana, ginger, nutmeg, cinnamon, and cayenne also do not support sexual function. (*Id.* ¶ 28.)

Plaintiff makes three core claims about IntenseX. First, he claims that IntenseX is misbranded because the product label and website make "disease" claims that cause reasonable consumers to believe that the product can treat premature ejaculation, erectile dysfunction, and diminished libido. (*Id.* ¶ 49.) Hence, Plaintiff claims, IntenseX violates FDA regulation 21 C.F.R. § 101.93, which regulates the claims manufacturers can make on supplement labels, as well as California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), Cal. Health & Safety Code § 109875 et seq., which incorporates the FDA's labeling regulations. (FAC ¶¶ 49, 51–52.) In turn, Plaintiff alleges, these violations are "unlawful" conduct within the meaning of the UCL. (*Id.* ¶¶ 88–89.)

Second, Plaintiff claims that IntenseX is misbranded because it is marketed for use as an aphrodisiac. (*Id.* ¶¶ 44–47.) The FDA has determined that any product that is promoted for use as an aphrodisiac is a "new drug" that requires premarket approval. *See* 21 C.F.R. § 310.528(b). Because Defendant does not have new-drug approval for IntenseX, Plaintiff asserts, the product is misbranded, in violation of

FDA regulations, the Sherman Law, and the unlawful prong of the UCL. (FAC ¶¶ 47–48, 51, 55, 88–89.)

Third, Plaintiff alleges that the IntenseX labeling and advertising is false and misleading because IntenseX is incapable of delivering the aphrodisiac and sexual-health benefits it promises. (*Id.* ¶¶ 32–43.) He claims that the product is thus misbranded under the Food, Drug, and Cosmetic Act ("FDCA"), the labeling violates California false-advertising laws and the Sherman Law, and these violations are also unlawful and unfair conduct under the UCL. (*Id.* ¶¶ 88–112.)

Plaintiff seeks an order compelling Defendant to conduct a corrective advertising campaign and destroy all misleading advertising materials, labels, and product; disgorgement; restitution; interest; attorney fees and costs; and actual and punitive damages. (*Id.* ¶ 129.)

### Discussion

### A. Request for Judicial Notice

Defendant requests judicial notice of scans of several items: (1) reproductions of the IntenseX label; (2) the FDA's Regulations on Statements Made for Dietary Supplements Concerning the Effect of the Product on the Structure or Function of the Body, 65 Fed.Reg. 1000 (Jan. 6, 2000); and (3) copies of the publications Plaintiff relied upon and cited in the FAC. (Doc. No. 32–2 & Exhs. A–H.) Plaintiff requests judicial notice of ten FDA warning letters that are available on the FDA's website. (Doc. No. 33–4 & Exhs. 1–10.) Both requests are unopposed.

Under Federal Rule of Evidence 201, courts can take judicial notice of facts that are not subject to reasonable dispute because they are either generally known or can be readily determined by reference to sources whose accuracy cannot reasonably be questioned. Courts addressing motions

to dismiss product-labeling claims routinely take judicial notice of images of the product packaging. *See, e.g., Lam v. General Mills, Inc.,* 859 F.Supp.2d 1097, 1100 (N.D.Cal.2012) ("The Court takes judicial notice of the packaging of Fruit Roll–Ups and Fruit by the Foot, examples of which were filed with the Court by General Mills."); *Rooney v. Cumberland Packing Corp.,* 2012 WL 1512106, at *2 (S.D.Cal. Apr. 16, 2012) (taking notice of reproductions of the panels of two boxes of Sugar in the Raw). Accordingly, the Court grants Defendant's request for judicial notice of scans of the product packaging.

The contents of the Federal Register are noticeable as a matter of law. *See* 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed...."); *Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n,* 366 F.3d 692, 702 n. 5 (9th Cir. 2004) (granting request for judicial notice of a proposed rulemaking published in the Federal Register). Hence, the Court also grants Defendant's request for judicial notice of the FDA publication from the Federal Register.

■ FDA warning letters available on the FDA's website are also appropriate subjects of judicial notice. *See In re ConAgra Foods Inc.,* 908 F.Supp.2d 1090, 1104 n. 39 (C.D.Cal.2012) ("The court can take judicial notice of the letter as a report of an administrative body."); *Von Koenig v. Snapple Beverage Corp.,* 713 F.Supp.2d 1066, 1073 (E.D.Cal.2010) ("The warning letters are matters of public record, available on the FDA website."). Accordingly, the Court grants Plaintiff's request for judicial notice of the FDA warning letters.

■ But the Court will not take judicial notice of the publications Plaintiff relied on and cited in the complaint. Instead, it will consider them under the doctrine of incorporation by reference. "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir.2003).

## B. Motion to Dismiss

■ A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. *See Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001). Generally, a complaint must satisfy only the minimal notice requirements of Federal Rule of Civil Procedure 8(a)(2) to avoid dismissal on a Rule 12(b)(6) motion. *See Porter v. Jones,* 319 F.3d 483, 494 (9th Cir.2003). Rule 8(a)(2) requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted). A complaint can be dismissed only if it "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir.2008). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (internal quotation marks omitted). Courts may also consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 323, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).

Defendant contends that all of Plaintiff's claims must be dismissed under these standards. The Court addresses each of its arguments in turn.

### 1. Express Preemption

Defendant contends that Plaintiff's state-law claims are all expressly preempted by the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq., as amended by the Nutrition Labeling and Education Act of 1990 ("NLEA"). (Doc. No. 32–1 at 16–17.) The FDCA sets guidelines for when food is misbranded. *See* 21 U.S.C. § 343. Subsection 343(a)(1) provides that food is misbranded if the "labeling is false or misleading in any particular." Subsection § 343(r)(6) provides that dietary supplement labels can make so-called "structure/function" claims, but not "disease" claims. A structure/function claim is a statement that

> claims a benefit related to a classic nutrient deficiency disease and discloses the prevalence of such disease in the United States, describes the role of a nutrient or dietary ingredient intended to affect the structure or function in humans, characterizes the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function, or describes general well-being from consumption of a dietary nutrient or dietary ingredient.

*Id.* § 343(r)(6)(A). A disease claim is a representation that a product can "diagnose, mitigate, treat, cure, or prevent a specific disease or class of diseases." *Id.* § 343(r)(6). If a product makes a disease claim, it is subject to regulation as a drug. *See* 21 C.F.R. § 101.93(f).

■ The FDCA contains an express preemption provision that preempts state-law food-labeling requirements that are "not identical to the requirements of section 343(r)." 21 U.S.C. § 343–1(a)(5). This provision applies to supplements be-

cause supplements are deemed to be "food" for purposes of the FDCA. 21 U.S.C. § 321(ff). Under this framework, state-law claims are preempted only "where application of state laws would impose more or inconsistent burdens on manufacturers than the burdens imposed by the FDCA." *Gallagher v. Bayer AG*, 2015 WL 1056480, at *4 (N.D.Cal. Mar. 10, 2015). "The NLEA is clear ... that if state law seeks to impose liability consistent with the FDCA, the law is not preempted." *Salazar v. Honest Tea, Inc.*, 74 F.Supp.3d 1304, 1311 (E.D.Cal.2014).

■ Defendant contends that Plaintiff's state-law claims are expressly preempted because the FDA has determined that statements like the ones on the IntenseX label are acceptable structure/function claims. (Doc. No. 32–1 at 17.) Defendant relies on guidance the FDA issued with the final regulation interpreting the distinction between structure/function claims and disease claims, 21 C.F.R. § 101.93(f)-(g). The guidance explains that " 'arouses or increases sexual desire and improves sexual performance' is an acceptable structure/function claim because it does not imply treatment of a disease." 65 Fed.Reg. 1000, 1030 (Jan. 6, 2000). But "improves performance, staying power, and sexual potency" and "builds virility and sexual potency" are disease claims because they use the term "potency," which implies treatment of impotence. *Id.*

This regulation preempts Plaintiff's theory that the IntenseX label makes impermissible disease claims. Among other things, the label promises "Sexual Power and Performance," that IntenseX is "designed to intensify your endurance, stamina, and sexual performance," and that it will enable users to "[a]chieve peak performance to maximize the experience when you want it most." (FAC ¶ 17.) According to Plaintiff, these are disease claims

because they lead reasonably prudent consumers to believe that IntenseX "can treat or cure impotence, premature ejaculation, erectile dysfunction, and diminished libido, which are diseases recognized by the FDA." (*Id.* ¶ 49.) But the statements on the label are indistinguishable from "arouses or increases sexual desire and improves sexual performance," which the FDA has determined are permissible structure/function claims. *See* 65 Fed. Reg. at 1030. Plaintiff's theory regarding the label statements is inconsistent with what the FDA requires, so it is expressly preempted. See *Gallagher,* 2015 WL 1056480, at *5–6 (holding that a similar misbranding theory was expressly preempted using this analysis).

■■■ But Plaintiff also identifies statements on the IntenseX website that are disease claims. For example, the website states: "Empirical evidence suggests tribulus may help impotence in men and diminished libido in both sexes." (FAC ¶ 43.) This statement is a disease claim because it "implies treatment of impotence, a disease." 65 Fed.Reg. at 1030. Plaintiff asserts that these statements violate 21 C.F.R. § 101.93, the Sherman Law, and the unlawful prong of the UCL. (FAC ¶¶ 88–89.) The Sherman Law incorporates FDA regulations and adopts them as the laws of California. *See* Cal. Health & Safety Code § 110100(a) ("All food labeling regulations ... adopted pursuant to the federal act ... shall be the food labeling regulations of this state."). Claims under the Sherman Law are not expressly preempted because the Sherman Law incorporates and hence parallels federal law. *See Hesano v. Iovate Health Sciences, Inc.,* 2014 WL 197719, at *6 (S.D.Cal. Jan. 15, 2015) (holding that a Sherman Law claim was not expressly preempted).

Plaintiff's other theories are also not expressly preempted. His second theory is that IntenseX is misbranded because it is marketed as an aphrodisiac, so that it is a "new drug" that is subject to the premarket approval process. (FAC ¶¶ 45–48.) The FDA's regulation in 21 C.F.R. § 310.528 states: "Any product that bears labeling claims that it will arouse or increase sexual desire, or that it will improve sexual performance, is an aphrodisiac drug" that must be approved as a new drug before it is marketed. Like Plaintiff's theory about the website, the FDCA does not expressly preempt this theory because Plaintiff alleges a violation of FDA regulations, a parallel violation of the Sherman Law, and a resulting violation of the unlawful prong of the UCL. (FAC ¶¶ 88–89.)

■■■ Plaintiff's third theory is that the IntenseX label is false and misleading because IntenseX does not and cannot provide the promised benefits. Because the label is false and misleading, Plaintiff asserts, it violates 21 U.S.C. § 343(a) of the FDCA and the unlawful, unfair, and fraudulent prongs of the UCL. (FAC ¶¶ 88–89, 95–96.) This theory is not preempted because state false-advertising laws are consistent with the FDCA's prohibition on false and misleading labeling and they are unrelated to the labeling requirements of § 343(r)(6). *See Gallagher,* 2015 WL 1056480, at *7 ("Not preempted would be a claim that 'supports heart health' as a structure/function claim is a false and misleading statement contrary to scientific studies."). The FDA recognized this when it issued the final regulations interpreting § 343(r)(6):

> The rule is neither intended to establish whether any particular structure/function claim is appropriate for any specific product, nor whether the claim would be permitted under other provisions of the act. Like the labeling of any other FDA-regulated product, the labeling of dietary supplements must comply with all applicable requirements of the act

and regulations. For example, an otherwise acceptable structure/function claim might nevertheless be false or misleading for other reasons, causing the product to be misbranded under [§ 343] of the act.

65 Fed.Reg. at 1001. Thus, Plaintiff's claims premised on the theory that the IntenseX labeling is false and misleading are also not expressly preempted.

### 2. Implied Preemption

▮ Next, Defendant proposes that Plaintiff's claims are impliedly preempted under 21 U.S.C. § 337(a). (Doc. No. 32–1 at 17–20.) Section 337(a) provides that "all ... proceedings for the enforcement, or to restrain violations of the [FDCA] shall be by and in the name of the United States." In a case involving medical devices, the Supreme Court held that § 337(a) impliedly preempted state-law fraud-on-the-FDA claims. See Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001). The Court reasoned that policing fraud on federal agencies was not a traditional state function, the premarket approval process for medical devices was heavily regulated, and the FDA's exclusive authority to enforce the regulations was a critical component of the regulatory framework. See id. at 347–49, 121 S.Ct. 1012. The Court concluded: "State-law fraud-on-the-FDA claims inevitably conflict with the FDA's responsibility to police fraud consistently with the Administration's judgment and objectives." Id. at 350, 121 S.Ct. 1012.

Defendant contends that the rule from Buckman applies here. It relies on several medical-device cases, which are inapposite here, and Fraker v. KFC Corp., 2007 WL 1296571 (S.D.Cal. Apr. 30, 2007), which concluded that § 337(a) impliedly preempted state-law food-labeling claims under Buckman. See id. at *3–4. The year after Fraker, however, the California Supreme Court held that § 337(a) does not preempt consumer food-labeling claims brought under the Sherman Law. See In re Farm Raised Salmon Cases, 42 Cal.4th 1077, 1089–96, 72 Cal.Rptr.3d 112, 175 P.3d 1170 (2008). It reasoned that the express-preemption provisions that apply to food labeling expressly allow parallel state laws, and Congress was presumably aware that most states had consumer-protection laws prohibiting unfair and deceptive marketing. See id. at 1091, 72 Cal. Rptr.3d 112, 175 P.3d 1170. Moreover, an uncodified portion of the NLEA provided that "the NLEA shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 343–1 of the FDCA." Id. (internal quotation marks omitted) (quoting Pub.L. No. 101–535, § 6(c)(1) (Nov. 8, 1990)).

Since then, district courts have routinely rejected arguments that state-law UCL, FAL, and CLRA food-labeling claims and related claims under the Sherman Law are impliedly preempted under § 337(a) and Buckman. See Vassigh v. Bai Brands, LLC, 2015 WL 4238886, at *4–5 (N.D.Cal. July 13, 2015) (collecting cases); Hesano, 2014 WL 197719, at *7 (S.D.Cal. Jan. 15, 2014) ("The FDCA ... does not preclude states from adopting their own parallel laws and adopting a different mechanism for enforcing those laws."); Trazo v. Nestle USA, Inc., 2013 WL 4083218, at *7 (N.D.Cal. Aug. 9, 2013) ("While state law tort actions cannot be used to improperly intrude on the FDA's exclusive jurisdiction, Plaintiffs here sue under state law— namely, the Sherman Law, UCL, FAL, and CLRA—and so their claims are not impliedly preempted."). This Court concludes that Plaintiff's claims are not impliedly preempted.

### 3. Lack of Substantiation / Falsehood

▮ Next, Defendant proposes that Plaintiff's claims fail because he alleges

only a lack of substantiation. (Doc. No. 32–1 at 20–25.) False-advertising claims based on a lack of substantiation, rather than provable falsehood, are not cognizable under the California consumer-protection laws. *See In re Clorox Consumer Litig.,* 894 F.Supp.2d 1224, 1232 (N.D.Cal.2012) (collecting cases). "Challenges based on a lack of substantiation are left to the Attorney General and other prosecuting authorities; private plaintiffs, in contrast, have the burden of proving that advertising is *actually* false or misleading." *Bronson v. Johnson & Johnson, Inc.,* 2013 WL 1629191, at *8 (N.D.Cal. April 16, 2013); *see Nat'l Council Against Health Fraud v. King Bio Pharm., Inc.,* 107 Cal.App.4th 1336, 1345, 133 Cal.Rptr.2d 207 (2003) ("Private plaintiffs are not authorized to demand substantiation for advertising claims.").

Plaintiff alleges only a lack of substantiation at points. For example, he alleges that "there is as yet no real evidence" that herbs offer any benefits for increasing sexual performance or desire, and there are "no reliable scientific studies" establishing that ginkgo biloba improves sexual function. (FAC ¶ 23.) But Plaintiff also alleges falsity. For example, he alleges that several studies have shown that ginkgo biloba has no effect on improving sexual function, and that avena sativa, guarana, ginger, nutmeg, cinnamon, and cayenne also do not improve sexual function. (*Id.* ¶¶ 23, 28.) Further, the FDA has determined that "labeling claims for aphrodisiacs for [over-the-counter] use are either false, misleading, or unsupported by scientific data." 21 C.F.R. § 310.528(a).

Defendant argues that Plaintiff has pleaded himself out of court, since the materials he relies on refer to studies that refute his position.[1] (Doc. No. 32–1 at 22

& n. 10.) In the Court's view, however, whether the IntenseX labeling statements are provably false based on these studies is an issue better addressed at summary judgment, when the record is more fully developed. As a result, the Court declines to dismiss Plaintiff's false-advertising claims on this basis.

### 4. Plausibility

▮▮▮▮ Next, Defendant contends that Plaintiffs's UCL, FAL, and CLRA claims are not plausible because no reasonable consumer could be deceived by the representations on the IntenseX label. (Doc. No. 32–3 at 25–26.) Claims under the UCL, FAL, and CLRA are governed by the "reasonable consumer" test. *Williams v. Gerber Prods. Co.,* 552 F.3d 934, 938 (9th Cir.2008). Plaintiff alleges, among other things, that the IntenseX labeling represents to consumers that the product has aphrodisiac effects, when it has none. (FAC ¶¶ 20–21.) What a reasonable consumer would believe is rarely an appropriate subject for a motion to dismiss, but leaves the defendant free to file a motion for summary judgment if there are no triable issues of material fact on this issue. *See Williams,* 552 F.3d at 938–39. Hence, the Court declines to dismiss Plaintiff's claims on this basis.

### 5. Particularity

▮▮▮▮ Next, Defendant argues that Plaintiff's UCL, FAL, and CLRA claims must be dismissed because they are insufficiently particular under Federal Rule of Civil Procedure 9(b). (Doc. No. 32–1 at 27–28.) Under Rule 9(b), a plaintiff must plead fraud with particularity. "Averments of fraud must be accompanied by the who, what, when where, and how of the

---

1. These materials were the subject of Defendant's unopposed request for judicial notice.

(Doc. No. 32–2 & Exhs. C–H.)

misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (internal quotation marks omitted). Rule 9(b) is satisfied if the allegations of fraud are "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir.2007). Plaintiff has alleged his claims with sufficient particularity, as evidenced by Defendant's ample and pointed defense. The Court, therefore, denies Defendant's motion to dismiss under Rule 9(b).

### 6. Breach of Express Warranty

 Defendant contends that Plaintiff's claim for breach of express warranty fails because Plaintiff has not alleged the elements of a claim. (Doc. No. 32–1 at 28–29.) To plead a claim for breach of express warranty, the plaintiff must allege the terms of the warranty, reasonable reliance, and that a breach of the warranty proximately caused his injury. *See Williams v. Beechnut Nutrition Corp.*, 185 Cal.App.3d 135, 142, 229 Cal.Rptr. 605 (1986). "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com.Code § 2313(1)(b); *see Viggiano v. Hansen Natural Corp.*, 944 F.Supp.2d 877, 893 (C.D.Cal.2013) ("A description of the goods at issue can create an express warranty so long as it was part of the basis of the bargain between the parties.").

Plaintiff has adequately pleaded the elements of a claim for breach of express warranty. He identifies the specific statements made on the IntenseX packaging that promised increased sexual power and performance; he alleges that he and putative class members reasonably relied on those statements; and he alleges that the product did not and cannot provide the promised effects. (FAC ¶¶ 64–66.) Defendant has not shown that this claim must be dismissed for any other reason, so the Court denies its motion to dismiss this claim.

### 7. Breach of Implied Warranty

 Defendant argues that Plaintiff's claim for breach of the implied warranty of merchantability must be dismissed because Plaintiff does not allege that IntenseX was unfit for its ordinary use. (Doc. No. 32–1 at 30.) The implied warranty of merchantability "is breached when the goods do not conform to the promises or affirmations contained on the container or label or are not fit for the ordinary purposes for which the goods are used." *Martinez v. Metabolife Int'l, Inc.*, 113 Cal.App.4th 181, 189, 6 Cal.Rptr.3d 494 (2003). These are two separate definitions of merchantability. *See Hauter v. Zogarts*, 14 Cal.3d 104, 117–18, 120 Cal. Rptr. 681, 534 P.2d 377 (1975). Defendant relies on the "ordinary use" definition, but Plaintiff relies on the other definition, alleging that the product "did not and does not provide the purported benefits." (FAC ¶ 122.) Defendant has not shown that Plaintiff's theory fails, so the Court denies the motion to dismiss it.

### 8. Magnuson–Moss Warranty Act

 Defendant asserts that Plaintiff's Magnuson–Moss Warranty Act ("MMWA") claim fails because product descriptions are not warranties and the IntenseX labeling is regulated by the FDCA, making the MMWA inapplicable. (Doc. No. 32–1 at 30–31.) The MMWA regulates warranties on consumer goods. It applies to written warranties, which are defined as a written affirmation that "relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or

will meet a specific level of performance over a specific period of time." 15 U.S.C. § 2301(6)(A). Separately, it borrows state-law causes of action for breach of warranty and makes them enforceable in federal court. *See Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir.2004) ("The Act also ... allows consumers to enforce written and implied warranties in federal court, borrowing state law causes of action."). When the MMWA claim is premised on borrowed state-law claims, the MMWA claim stands or falls with the state-law claims. *See Clemens v. Daimler-Chrysler Corp.*, 534 F.3d 1017, 1022 & n. 3 (9th Cir.2008).

The MMWA is expressly "inapplicable to any written warranty the making or content of which is otherwise governed by Federal Law." 15 U.S.C. § 2311(d). But the next sentence provides: "If only a portion of a written warranty is so governed by Federal law, the remaining portion shall be subject to this chapter." *Id.* Some courts have dismissed MMWA claims in product labeling actions based on the first sentence, with little analysis and no mention of the second sentence. *See, e.g., Bates v. Gen. Nutrition Centers, Inc.*, 897 F.Supp.2d 1000, 1002 (C.D.Cal.2012) ("Defendants are correct that the [MMWA] claim should be dismissed because the [FDCA] governs written warranties on the labeling of dietary supplements."). Other courts have allowed supplement labeling claims under the MMWA to proceed, with no discussion of this provision. *See, e.g., Dorsey v. Rockhard Labs, LLC*, 2014 WL 4678969, at *9–10 (C.D.Cal. Sept. 19, 2014) ("As to the statements 'Sexual Performance Enhancer for Men' and 'Fast & Effective,' Plaintiff has stated a plausible claim under the MMWA.").

Plaintiff borrows the state-law warranty claims, (FAC ¶ 127), which are adequately pleaded, and he asserts that the product is ineffective, contrary to the representations on the label, (*id.* ¶¶ 131–32). As a result, the complaint states a claim under both applications of the MMWA. Plaintiff will have to prove that the product does not work and is "defective" within the meaning of the MMWA, and Defendant is free to claim that the label made no warranty within the meaning of the MMWA. *See Dorsey*, 2014 WL 4678969, at *9 ("Sexual Performance Enhancer for Men" and "Fast & Effective" were warranties for purposes of the MMWA and "not mere product descriptions"); *Allen v. Hyland's Inc.*, 2013 WL 1748408, at *5–6 (C.D.Cal. 2013) ("While a product that is 'synthetic' and 'artificial' may not be defective, a product that is ineffective is."). Whether § 2311(d) precludes Plaintiff's MMWA claim is better suited for a motion for summary judgment, when the record is more fully developed and the parties further analyze the statutory scheme under the facts of the case.

**9. Claims Under the UCL**

■ Defendant asserts that Plaintiff has failed to plead any UCL violation. (Doc. No. 32–1 at 31–32.) But Plaintiff's theories that the IntenseX labeling violates FDA regulations, the Sherman Law, and the unlawful prong of the UCL survive Defendant's challenges. *See Hesano*, 2014 WL 197719, at *6–7. Plaintiff's false-advertising theory under the fraudulent prong of the UCL also survives. *See Gallagher*, 2015 WL 1056480, at *7–9. Defendant contends that Plaintiff has not adequately alleged a violation of the unfair prong because he did not identify the established public policy the label violates and he has not pleaded facts to suggest that Defendant's conduct was immoral, oppressive, or substantially injurious to consumers. (Doc. No. 32–1 at 32.) But Plaintiff alleges that the IntenseX labeling "offends public policy by seeking to profit

from consumers' vulnerability to false or deceptive virility or aphrodisiac claims, and the utility of the[ ] conduct, if any, does not outweigh the gravity of the harm." (FAC ¶ 95.) Defendant has not shown that such allegations are insufficient to state an unfair-prong claim.

### 10. CLRA Claim

▮▮▮▮ Defendant contends that the Court must dismiss Plaintiff's CLRA claim for damages with prejudice because he did not provide the required notice before he filed suit. (Doc. No. 32–1 at 32–33.) Defendant points out that the demand letter attached to the FAC is dated January 6, 2015, less than 30 days before Plaintiff filed this action.[2] (FAC, Exh. 2.)

The CLRA requires consumers to provide notice of a CLRA violation by certified or registered mail 30 days or more before commencing an action for damages. *See* Cal. Civ.Code § 1782(a). For some time, federal courts in this district dismissed CLRA claims with prejudice when the plaintiff did not provide the required notice before filing the complaint. *See Cattie v. Wal–Mart Stores, Inc.*, 504 F.Supp.2d 939, 949–50 (S.D.Cal.2007); *Laster v. T–Mobile USA, Inc.*, 407 F.Supp.2d 1181, 1196 (S.D.Cal.2005). They reasoned that strict adherence to the CLRA's notice provision was necessary to accomplish the CLRA's goals of encouraging settlement before litigation. *See Cattie*, 504 F.Supp.2d at 950 ("Permitting Plaintiff to seek damages first and then later, in the midst of a lawsuit, give notice and amend would destroy the notice requirement's utility, and undermine the possibility of early settlement."); *Laster*,

407 F.Supp.2d at 1181 ("Strict adherence to the statute's notice provision is required to accomplish the Act's goals of expeditious remediation before litigation.").

But, in 2009, the California Court of Appeal criticized these decisions for failing to properly take into account the purpose of the notice requirement, which "exists in order to allow a defendant to avoid liability for damages if the defendant corrects the alleged wrongs within 30 days after notice, or indicates within that 30–day period that it will correct those wrongs within a reasonable time." *Morgan v. AT & T Wireless Servs., Inc.*, 177 Cal.App.4th 1235, 1261, 99 Cal.Rptr.3d 768 (2009). The court concluded:

> A dismissal *with prejudice* of a damages claim filed without the requisite notice is not required to satisfy this purpose. Instead, the claim must simply be dismissed until 30 days or more after the plaintiff complies with the notice requirements. If, before that 30–day period expires the defendant corrects the alleged wrongs or indicates it will correct the wrongs, the defendant cannot be held liable for damages.

*Id.*

Defendant urges the Court to follow the pre-*Morgan* federal cases [3] and dismiss Plaintiff's CLRA claim with prejudice. (Doc. No. 32–1 at 32.) But, in the absence of a California Supreme Court decision on this issue, this Court is obligated to follow state-court appellate decisions unless there is convincing evidence that the California Supreme Court would decide differently. *See Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir.2001).

---

**2.** Plaintiff filed his initial complaint on January 20, 2015. (Doc. No. 1.)

**3.** Defendant relies on one post-*Morgan* district court case. *See In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802

F.Supp.2d 1070 (N.D.Cal.2011). This case is not persuasive because it followed the pre-*Morgan* cases without any analysis, without discussing *Morgan,* and as a secondary reason for dismissing a CLRA claim without prejudice. *See id.* at 1077.

Under *Morgan*, dismissal with prejudice would not be appropriate. *See* 177 Cal. App.4th at 1261, 99 Cal.Rptr.3d 768. Further, there is nothing to gain by dismissing this claim with leave to amend, since Plaintiff filed the FAC in June 2015, nearly five and a half months after he gave Defendant notice, and there is no sign that Defendant has attempted to remedy the alleged violations since then. If there are arguments to the contrary, Defendant did not make them. Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's CLRA claim for damages.

### 11. Injunctive Relief

■■■ Next, Defendant contends that Plaintiff does not have standing to seek injunctive relief because he does not allege that he will purchase IntenseX again. (Doc. No. 32–1 at 33.) To establish standing, the plaintiff must show that he suffered an injury in fact, the injury is "fairly traceable" to the defendant's conduct, and the injury is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). A plaintiff seeking injunctive relief must demonstrate that "he has suffered or is threatened with a concrete and particularized legal harm . . . coupled with a sufficient likelihood that he will again be wronged in a similar way." *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir.2007) (internal quotation marks omitted).

District courts are split as to whether plaintiffs in product-labeling actions have standing to seek injunctive relief, since consumers who know the truth cannot claim any future reliance on the purportedly misleading labeling. *See In re 5–hour ENERGY Marketing & Sales Practices Litig.*, 2014 WL 5311272, at *10–11 (C.D.Cal. Sept. 4, 2014). Some have held that consumers have standing to seek injunctive relief because denying standing would thwart the purposes of California's

consumer-protection laws. *See id.* (collecting cases). Others have held that consumers continue to be harmed if the misrepresentations continue, since they cannot rely on the defendant's representations. *See id.* at *11 (collecting cases). Courts use this second approach only when the plaintiff indicates a desire to purchase the product again in the future. *See id.* A third group has concluded that Article III's standing requirements cannot be avoided on policy grounds. *See id.* (collecting cases).

■■■ Plaintiff has standing to pursue his claims, and Defendant does not contend otherwise. Injunctive relief is a remedy, not a cause of action subject to a motion to dismiss. *See Shell Oil Co. v. Richter*, 52 Cal.App.2d 164, 168, 125 P.2d 930 (1942). Defendant's request to shave off one remedy does not require dismissal of his claims. For now, the Court declines to dismiss Plaintiff's request for injunctive relief.

### 12. Choice of Law

In response to the Court's request for briefing, Defendant argues that all of Plaintiff's claims must be dismissed under *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir.2012), because Plaintiff is a Florida resident who bought Defendant's product in Florida. (Doc. No. 37.) *Mazza* applied California choice-of-law rules and concluded, under the facts of the case, "that each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." 666 F.3d at 594. California's choice-of-law rules require a case-by-case analysis of whether there are material differences between the laws of the relevant states and, if so, which state's interest would be most impaired by application of the other state's law. *See id.* at 590. De-

fendant contends that there are numerous material differences between California and Florida consumer-protection and warranty laws and that Florida's interests prevail over California's. (Doc. No. 37 at 4–6, 9–10.) In the particular circumstances of this case, however, whether the differences in law are truly material is better suited for resolution at class certification or on a motion for summary judgment, when the Court will have the benefit of a more developed factual record. For now, the Court declines to dismiss Plaintiff's claims on this basis.

## C. Motion to Strike

Defendant moves to strike Plaintiff's allegations regarding punitive damages and the statements on the IntenseX website. (Doc. No. 32–1 at 20 n. 8, 33–34.) Federal Rule of Civil Procedure 12(f) provides that courts "may strike from any pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Courts ordinarily grant motions to strike only when the matter to be stricken clearly has no possible bearing on the litigation. *See Ollier v. Sweetwater Union High Sch. Dist.*, 735 F.Supp.2d 1222, 1223–24 (S.D.Cal.2010). "Motions to strike are rarely granted in the absence of a showing of prejudice to the moving party." *Id.* (internal quotation marks omitted).

Defendant contends that Plaintiff has not properly pleaded punitive damages. (Doc. No. 32–1 at 33–34.) Defendant relies on California Civil Code § 3294(b), which provides, for corporate punitive damages liability, that an "officer, director, or managing agent of the corporation" must have consciously disregarded, authorized, or ratified each act of "oppression, fraud, or malice." *See also White v. Ultramar, Inc.*, 21 Cal.4th 563, 572, 88 Cal. Rptr.2d 19, 981 P.2d 944 (1999). Plaintiff alleges that he notified Defendant by certified mail of the alleged CLRA violations, based on the purportedly false and misleading labeling, but Defendant did not remedy them. (FAC ¶¶ 111–13.) He also alleges that Defendant's "senior officers and directors ... allowed IntenseX to be sold with full knowledge or reckless disregard that the challenged claims are fraudulent, unlawful, and misleading." (*Id.* ¶ 73.) In light of these allegations, the Court declines to strike Plaintiff's prayer for punitive damages at this time. The Court also declines to strike the other challenged allegations, as Defendant has not shown that the Rule 12(f) standards are met.

### Conclusion

The Court denies Defendant's motion to dismiss and strike, (Doc. No. 32). Many of the issues raised are better suited for summary judgment or class certification. The Court orders Defendant to answer no later than **November 18, 2015.**

**IT IS SO ORDERED.**