******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# BRENDA MCLEOD *v.* A BETTER WAY
## WHOLESALE AUTOS, INC.
### (AC 38608)

DiPentima, C. J., and Prescott and Beach, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant for, inter alia, breach of the implied warranty of merchantability in connection with her purchase of an automobile from the defendant. The case was tried to the court, and, at the close of the plaintiff's case, the defendant moved for a judgment of dismissal on all counts of the complaint, which the trial court granted as to certain counts, including count one alleging breach of the implied warranty of merchantability. Thereafter, the defendant presented its evidence, and the trial court subsequently rendered judgment for the plaintiff on counts one through four of the complaint, from which the defendant appealed to this court. Subsequently, the trial court granted the plaintiff's motions for attorney's fees, and the defendant filed an amended appeal. On appeal, the defendant claimed, inter alia, that the trial court improperly rendered judgment for the plaintiff on count one because the court previously had dismissed that count. The defendant also claimed that, in light of the trial court's dismissal of count one, the court improperly determined that the defendant had violated the Magnuson-Moss Act (15 U.S.C. § 2310 [d]), as alleged in count two of the complaint, which violation was based on the defendant's alleged failure to comply with its obligations under the implied warranty of merchantability. *Held*:

1. The trial court improperly rendered judgment for the plaintiff on count one of the complaint; that court clearly and unequivocally rendered a judgment of dismissal as to count one, and, once it did so, the count was effectively removed from the case, and the court had no authority to address the merits of that dismissed count in its final decision or to award damages on the basis of the dismissed cause of action; moreover, even though a trial court has the authority to correct clerical errors in a prior judgment or to clarify or interpret an ambiguous judgment, the trial court never indicated to the parties that it had determined that its prior dismissal of count one was in error, and its subsequent ruling on the merits could not be construed as an implicit reversal, sua sponte, of its prior determination that the plaintiff had failed to present a prima facie case on that count, as that could have unfairly prejudiced the defendant, which did not have an opportunity to present evidence in defense of that count, it having believed that it was dismissed.

2. The trial court improperly rendered judgment for the plaintiff on count two of the complaint alleging a violation of the Magnuson-Moss Act: because the plaintiff's general theory of recovery with respect to count two hinged on her state law claim in count one, which alleged a violation of the implied warranty of merchantability, the court's dismissal of count one for failure to make out a prima facie case precluded any finding that such a breach formed the basis of a violation of the Magnuson-Moss Act; moreover, the court could not have found that the plaintiff proved a violation of that act on the basis of its finding of a breach of an express warranty, as alleged in count three of the complaint, because the plaintiff never pleaded such a violation.

3. The trial court improperly awarded the plaintiff attorney's fees as a component of damages under count two of the complaint for the defendant's purported violation of the Magnuson-Moss Act, which contains an express statutory exception to the general rule that a successful party may not recover attorney's fees and ordinary expenses of litigation in the absence of a contractual or statutory exception; in light of this court's determination that the trial court improperly rendered judgment for the plaintiff on count two, the plaintiff could not reasonably rely on the express statutory grant of authority for attorney's fees under the Magnuson-Moss Act as a legal basis for upholding the trial court's award of attorney's fees under that count.

4. The trial court's finding that the defendant had committed fraud was

legally and logically correct and supported by the evidence; the court's finding that the defendant made a false statement by failing to disclose an accurate odometer reading was supported by the evidence and was not clearly erroneous, and the court properly found, on the basis of the evidence presented and inferences reasonably drawn therefrom, that the mileage of the vehicle purchased by the plaintiff was not accurately recorded by the defendant's representatives, the recording failures were a deliberate attempt to record lower mileage, that deceit and misrepresentation were to the detriment of the plaintiff because they impacted her ability to take full advantage of the warranty period, the defendant's actions were intended to induce the plaintiff's reliance on its representations, and the plaintiff purchased the vehicle believing the sale included warranty coverage for 3000 miles, when in fact, due to the defendant's actions, the vehicle warranty would expire after fewer miles, lowering the value of the vehicle and reducing the defendant's potential liability for repairs.

5. The trial court improperly awarded the plaintiff punitive damages of $15,000 under count four, which alleged fraud; the court failed to explain the factual basis for its award and had no evidence before it regarding the plaintiff's total litigation expenses, as the plaintiff had submitted an affidavit from her attorney claiming attorney's fees of nearly $7000 but did not provide any evidence from which the court reasonably could have inferred an additional $8000 in nontaxable costs, and, although some award of punitive damages was permissible in conjunction with the fraud count, a new hearing was necessary to determine the actual amount of the plaintiff's litigation expenses, which, in addition to reasonable attorney's fees, would include other nontaxable costs.

Argued April 10—officially released October 24, 2017

*Procedural History*

Action to recover damages for, inter alia, breach of the implied warranty of merchantability, and for other relief, brought to the Superior Court in the judicial district of Waterbury and tried to the court, *Brazzel-Massaro, J.*; thereafter, the court granted in part the defendant's motion for a judgment of dismissal and rendered judgment for the plaintiff, from which the defendant appealed to this court; subsequently, the court, *Brazzel-Massaro, J.*, granted the plaintiff's motions for attorney's fees, and the defendant filed an amended appeal. *Vacated in part*; *reversed in part*; *judgment directed*; *further proceedings*.

*Kenneth A. Votre*, for the appellant (defendant).

*Louis E. Faiella*, with whom, on the brief, was *Scott Jackson*, for the appellee (plaintiff).

*Opinion*

PRESCOTT, J. In this action for damages arising out of the purchase of a used automobile, the defendant, A Better Way Wholesale Autos, Inc., appeals, following a trial to the court, from the judgment rendered in favor of the plaintiff, Brenda McLeod, on counts one through four of her six count complaint.[1] Counts one through four alleged, respectively, that the defendant breached the implied warranty of merchantability, violated the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act (Magnuson-Moss Act), 15 U.S.C. § 2301 et seq., breached an express statutory warranty, and committed common-law fraud. In total, the court awarded the plaintiff $5435 in actual damages, $15,000 in punitive damages, and $7045.35 in attorney's fees. The defendant claims on appeal that the court improperly (1) determined that the defendant had breached the implied warranty of merchantability as alleged in count one because that count previously had been dismissed along with counts five and six at the close of the plaintiff's case-in-chief pursuant to Practice Book § 15-8; (2) determined that the defendant had violated 15 U.S.C. § 2310 (d) of the Magnuson-Moss Act, despite the plaintiff's having pleaded that the alleged violation arose from the defendant's breach of the implied warranty of merchantability as alleged in count one, which the court had dismissed because the plaintiff had failed to establish a prima facie case; (3) awarded the plaintiff attorney's fees; (4) determined that the defendant committed common-law fraud without clear and convincing evidence of either a false statement or intent to defraud; and (5) awarded the plaintiff punitive damages on the fraud count.[2] We agree with the defendant as to all but the fourth claim and, accordingly, reverse in part the judgment of the court and remand the case with direction to render judgment in accordance with this opinion and for a new hearing in damages. We otherwise affirm the court's judgment.

The following facts, as found by the court, and procedural history are relevant to our resolution of the defendant's claims on appeal. The plaintiff lived in Waterbury and commuted to work in Monroe. In September, 2012, she determined that she needed a more reliable automobile, and she visited the defendant's used car dealership and met with one of its sales representatives. During that first visit, she expressed an interest in buying a Jeep that she saw on the sales lot and provided a $500 deposit to hold the vehicle. She returned to the dealership on October 1, 2012, and looked at other vehicles. On that date, she test-drove a 2008 Saab. She expressed her interest in purchasing the Saab and changed her deposit to that vehicle. A retail purchase order was completed and signed by the plaintiff on October 1, 2012. The purchase order indicated that the mileage on the Saab's odometer was 65,738.

The vehicle was serviced by the defendant on October 5, 2012. At that time, a repair order was completed that listed the vehicle's mileage as 65,743.

The plaintiff returned to the defendant's business on October 10, 2012—this time with her fiancé. They test-drove the Saab for a second time. After the plaintiff indicated that she wanted to purchase the Saab, the defendant prepared the necessary paperwork, which included an invoice, loan documents, registration, an odometer statement, and a new retail purchase order listing the total cash price for the vehicle as $16,267.67. The October 10, 2012 odometer statement indicated that the Saab had 65,738 miles. That mileage was identical to the odometer reading listed on the October 1, 2012 retail purchase order, despite the additional test drive that occurred on October 10, 2012. The mileage was also less than the mileage recorded on the October 5, 2012 repair order.

The plaintiff finalized the purchase and took possession of the Saab on October 17, 2012. When she returned that day, she noted that the car had been returned to the sales lot rather than placed in a secure location. Her understanding was that the vehicle would be separated from other inventory so that it would not be test-driven by other potential customers. She noticed that the Saab had additional miles on the odometer since she first expressed her interest in purchasing it.[3] The defendant did not prepare a new odometer reading on October 17, 2012, when the plaintiff completed the purchase documents and accepted delivery of the Saab. Included among the various purchase documents was a limited express warranty, mandated by statute, covering specified parts for sixty days or 3000 miles, whichever occurred first.[4] See General Statutes § 42-221 (b). The warranty, which was dated October 17, 2012, did not contain a specific odometer reading. In fact, none of the purchase documents indicated the odometer reading as of October 17, 2012, the day of delivery. Although the plaintiff noted a chemical smell coming from the vehicle that day, she was told that this would burn off.

On Friday, December 7, 2012, during her commute to work, the plaintiff began experiencing problems with the vehicle's operation. The next day, she called the defendant to alert it to the problems and, later that same day, brought the vehicle to the defendant's business. A representative of the defendant drove the vehicle to determine if there was a problem, but the plaintiff was told that the service department was not open on that Saturday and that she needed to return with the vehicle at a later date. No paperwork was completed by the defendant on that date to memorialize the nature of the plaintiff's complaint, the condition of the vehicle, or the vehicle's mileage as of that date.

The plaintiff returned with the vehicle on the follow-

ing Monday, December 10, 2012. At that time, a repair order was completed. Although the typed portion of the repair order form indicated that the "current mileage" was 65,743, in the next box designating "mileage out," there is a handwritten indication that the mileage was 68,931. The form also listed incorrectly the "delivery date" as October 3, 2012. Handwritten notes on the form indicated "needs engine" and estimated repairs totaling $5000.

At some point, the defendant informed the plaintiff that the vehicle would need a new engine and that the repairs would not be covered by her warranty because the car was 188 miles over the mileage warranty limit of 3000 miles. The defendant attempted to convince the plaintiff to enter into a new contract with it to replace the vehicle. The plaintiff retained counsel, who, on April 9, 2013, sent a letter to the defendant revoking acceptance of the vehicle and demanding that the defendant return all moneys paid in connection with the purchase of the Saab. The plaintiff filed the present action on January 31, 2014, challenging, inter alia, the defendant's denial of her warranty claim.

The complaint contained six counts. Count one alleged a breach of the implied warranty of merchantability and asserted that the vehicle was not in merchantable condition when sold to the plaintiff and was not fit for the ordinary purpose for which a car is used. See General Statutes § 42a-2-314 (1) ("[u]nless excluded or modified as provided by section 42a-2-316, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind").

Count two alleged a violation of the Magnuson-Moss Act. Specifically, the plaintiff alleged that the vehicle was a consumer product as defined by the act and that the defendant, as a warrantor under the act, had "failed to comply with its obligations *under the implied warranty of merchantability*" and, thus, was liable to her for "her damages, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 2310 (d)."[5] (Emphasis added.)

Count three alleged a violation of the express warranty, in accordance with § 42-221, that she was provided at the time of the sale.[6] In particular, she claimed that the vehicle had been sold with the statutorily required warranty that it would be mechanically operational and sound for at least sixty days or 3000 miles, and that she possessed and controlled the vehicle for less than sixty days and operated the vehicle for less than 3000 miles at the time she reported her operational problems to the defendant.

Count four alleged that the defendant committed fraud by registering the sale of the vehicle to her with the Department of Motor Vehicles using an odometer reading that was significantly lower than the actual

odometer reading on the vehicle as of the date of delivery. The defendant allegedly then used that fraudulently disclosed odometer reading to deny her claim for repairs under the warranty.

Count five alleged that she had "justifiably and effectively" revoked her acceptance of the Saab on April 9, 2013, and that the defendant had refused to return all amounts paid by the plaintiff. See General Statutes § 42a-2-608.[7]

Finally, count six alleged that the defendant's actions violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. According to the plaintiff, the defendant had engaged in unfair and deceptive acts or practices by, inter alia, committing fraud with respect to the odometer readings and then using that fraud to deny the plaintiff warranty coverage; failing to abide by any implied warranties; and failing to recognize the plaintiff's revocation of acceptance. In addition to damages, the plaintiff sought attorney's fees, costs, and punitive damages pursuant to CUTPA.

The matter was tried to the court, *Brazzel-Massaro, J.*, on September 16, 2015. At the close of the plaintiff's case, the defendant moved for a judgment of dismissal as to all counts of the complaint on the ground that the plaintiff had failed to make out a prima facie case. See Practice Book § 15-8.[8]

With respect to count one, the defendant argued that in order to prove a breach of the implied warranty of merchantability, the plaintiff needed to have produced some evidence that the vehicle was not in a merchantable condition at the time the vehicle was sold to her. According to the defendant, the only evidence before the court demonstrated that the vehicle was in proper working condition when it was sold and that it was utilized thereafter by the plaintiff, without difficulties, for a considerable period of time.

As to count two alleging a violation of the Magnuson-Moss Act, the defendant argued that the act was designed primarily to ensure that warranties were properly disclosed and explained to consumers, and that the plaintiff had presented no evidence demonstrating any disparity or disagreement as to the terms of the express warranty at issue in the present case, which was disclosed in writing to the plaintiff.

The defendant initially argued that there was no evidence presented that the defendant had breached the express warranty as alleged in count three because the only credible evidence presented demonstrated that the vehicle had been driven more than 3000 miles at the time it was presented for warranty repairs. The defendant later conceded, however, that the evidence the plaintiff had presented thus far may have been sufficient to raise a factual dispute regarding that issue.

According to the defendant, the plaintiff also had failed to produce any evidence, let alone clear and convincing evidence, demonstrating that the defendant misrepresented a material fact or had the necessary intent to support the allegation of fraud in count four.

Regarding the fifth count alleging a revocation of acceptance, the defendant argued that this claim failed as a matter of law because the evidence presented demonstrated that the purported revocation was not made within a reasonable period of time. Specifically, the revocation was made via an April, 2013 letter, which was six months after the vehicle was delivered to the plaintiff and four months after the warranty dispute arose.

Finally, the defendant argued that the plaintiff had failed to establish a prima facie case of a CUTPA violation as alleged in count six. The defendant again noted that the plaintiff had failed to present any evidence rising to the level of fraud, which it claimed was the only stated basis in the complaint for the CUTPA count.

In response, the plaintiff argued that the court should deny the defendant's motion to dismiss as to all six counts. The plaintiff first argued that she had presented evidence that the vehicle needed a new engine to be operable and that this was sufficient to move forward on the claim of breach of the implied warranty of merchantability, which requires that goods be fit for the ordinary purpose for which they are sold. With respect to the Magnuson-Moss count, the plaintiff argued that it goes "hand in hand with the express warranty as provided by state statute" and, thus, was directly linked to the breach of the express warranty as alleged in count three of the complaint. The plaintiff further argued that she had established a prima facie case of breach of the express warranty because, according to her testimony, she had provided the defendant with notice of her warranty claim prior to its expiration, even if the vehicle had been driven in excess of 3000 miles by the time the vehicle was brought into the dealer to effectuate the necessary repairs.[9] With respect to the fraud count, the plaintiff argued that she had established a prima facie case on the basis of both the discrepancies in the mileage recorded on the purchase paperwork and the fact that the defendant tried to get her to spend more money on a replacement vehicle without first informing her that the repairs to the Saab fell outside the warranty period. The plaintiff disagreed with the defendant that her attempt to revoke the sale was not made within a reasonable time after discovering the ground for revocation. Finally, the plaintiff essentially argued that her CUTPA claim was not solely based upon fraud but upon a multitude of unfair and deceptive practices by the defendant and that the CUTPA count remained viable on the basis of the evidence presented.

After hearing argument from the parties and considering a memorandum of law submitted by the defendant, the court issued the following oral decision: "As to count one, *the court is going to dismiss count one.* I don't think that the plaintiff has presented sufficient evidence to indicate that there's been any implied warranty of merchantability that has been in any way proven by you. I do agree with defense counsel that I think you needed more than just to say that the car broke down. It was obviously working at the time. [The] plaintiff testified that she took it for two test drives, and it seemed to be fine, and everything was good about it, had been through whatever mechanical work it needed to have done in order to put it on the lots, so there's nothing to indicate that, in fact, that there was *at the time that she took it off the lot* a problem with the car.

"The other counts do create some concern. And some question I think is still left in the mind of the court as to count[s] two, three, and four, how—so, I will not grant the motion to dismiss as to each of those counts. I think a lot of that has to do with the time period and also what the miles were on the car. The court has heard evidence which could be interpreted in many ways as to what the mileage of the car was from the time that she first picked it up on October 17 [2012] until the first time at the dealer, which was December the 10th—I'm sorry—December the 8th, when it was actually driven by somebody, as the plaintiff has testified—I haven't heard anything that would be contrary to that—on December the 8th to the dealer. So, counts two, three, and four, the court will not grant the motion to dismiss.

"I will grant the motion to dismiss as to the CUTPA claim. I don't think that there's sufficient evidence to rise to the level of a CUTPA claim—or, I'm sorry, that's count six as to the CUTPA claim—simply because the car broke down at some point and there's a question about the warranty. I think that the level of evidence that's necessary in a CUTPA claim has not been satisfied in this particular action.

"As to count five regarding revocation of acceptance, I noted that exhibit 3, which was provided to the court, was actually a letter that was provided to her counsel some months later to the dealer. There doesn't seem to be any evidence other than that there was a revocation of acceptance. In fact, they were in negotiations going back and forth. I don't think there was a revocation of acceptance. And I would grant the motion to dismiss as to count five also.

"*So, what we have remaining is counts two, three, and four of the complaint.*" (Emphasis added.)

The defendant then proceeded to put on its evidence. At the close of all evidence, the court instructed the

parties that it would accept simultaneous posttrial briefs of ten pages or less on or before September 30, 2015. Each party submitted a memorandum of law on that date. No motion for reconsideration ever was filed regarding those counts of the complaint that were dismissed during the trial, nor did the court ever open, vacate, or modify its judgment dismissing counts one, five and six.

On October 30, 2015, the court issued a memorandum of decision. After setting forth its factual findings, the court first indicated that it had already "directed a verdict" as to counts five and six, and that the remaining causes of action to be considered were those in counts one through four. Although technically the court had dismissed certain counts rather than having "directed a verdict" for a particular party, the court's failure to recognize that it had already disposed of count one is far more significant to our analysis, as we discuss in parts I and II of this opinion.

The court next turned to a discussion of what it aptly identified as the primary factual dispute in this case, namely, whether the 3000 mile provision of the express warranty had lapsed by the time the plaintiff sought coverage under the warranty. The court determined, on the basis of the paperwork that had been admitted into evidence and the testimony of witnesses, that the defendant had failed to document accurately the vehicle's odometer readings throughout its dealings with the plaintiff. The court noted that accurate odometer readings were essential to evaluating warranty claims and found that the lack of accurate documentation in the present case was detrimental to the plaintiff's ability to establish her rights under the warranty. The court thus resolved any factual dispute regarding mileage in favor of the plaintiff. In particular, the court found that the defendant's errors regarding the odometer readings, when coupled with the fact that the plaintiff was permitted to engage in additional and significant travel after the defendant had received notice of a claimed defect but prior to its evaluation of the vehicle, provided a sufficient basis on which the court could "determine that the plaintiff was within the warranty period and, thus, there [was] a breach of warranty" by the defendant. The court stated: "Although the actions of the defendant can be characterized as careless and sloppy, they are also dishonest in that when the car left the lot on October 17, 2012, the plaintiff was relying on a warranty that was not appropriately calculated, and the mileage was not accurately noted by the defendant when she first brought the car to the defendant dealer on December 8 or December 10, 2012."

The court then continued its analysis by turning to a discussion of each of the purportedly unresolved counts, stating: "Having determined that the plaintiff was within the warranty period, the court examines the

claims." With respect to count one alleging a breach of the implied warranty of merchantability, which it had already dismissed, the court found that the defendant had sold the vehicle with an assurance of merchantability, and that it would not be expected that a vehicle with a cash value of more than $16,000 would need a new engine costing between $4000 and $5000. The court found that the vehicle was not in merchantable condition because it was not fit for the ordinary purpose for which it was intended, which the court identified as "normal and reliable driving to work and elsewhere." The court concluded that the plaintiff was entitled to recover her actual damages, which the court calculated to be "so much of the price as has been paid through her trade-in allowance of $4500 and the additional costs of $800 as the gap contract and title and government license and registration fees of $135 for a total of $5435 . . . ."

Turning to count two, the court indicated that the Magnuson-Moss Act permits a consumer to sue a warrantor for a breach of a written or implied warranty, but creates no additional basis for liability, limiting recovery to those damages existing under state law plus reasonable attorney's fees. In other words, the court noted, claims under the Magnuson-Moss Act "stand or fall with [the] express and implied warranty claims under state law." The court concluded that "based upon the finding by the court that there is liability for breach of warranty, the plaintiff is entitled to the $5435 actual damages as awarded for the breach of warranty and reasonable attorney's fees . . . ."

The court next awarded the plaintiff her actual damages of $5435 for violation of the express warranty as alleged in count three. The court found that the plaintiff had proven her cause of action because, as it already determined, at the time the plaintiff submitted her request for repairs, the vehicle had been driven less than 3000 miles and, thus, remained under warranty.

Finally, as to the fraud allegations in count four, the court also ruled in favor of the plaintiff. After setting forth the elements of a cause of action sounding in fraud and properly noting that fraud must be proven by " 'clear and satisfactory' " evidence, the court stated: "In this action, the defendant was the party responsible for recording accurately the odometer readings. The testimony of [the defendant's representative] is that when repairs are done, the miles are first noted by the service department in the [repair order]. This testimony is not accurate, given the documents which the court has earlier described as cookie cutter because it appears that the numbers are not an accurate reflection of the odometer, but are more a copying from paperwork. The defendant provided the plaintiff with the warranty not on October 10 but on October 17, 2012 when she came back to the dealer. Their failure to do

an actual reading with the warranty is not only sloppy but can be viewed in no other way than as a deliberate act to record lower miles knowing that the car has been driven to emissions, for a number of test drives and repair work. The statement of the mileage is not correct based upon the testimony and the dealer's records. It must be known to the dealer when there has been no change in the mileage although the car has been on the lot presumably with test drives, servicing, and emissions testing that the readings should reflect these normal activities. The plaintiff relied upon the defendant in establishing the base number for her warranty, and there is no testimony that anyone ever looked specifically at the odometer to record the mileage (other than possibly sometime after the plaintiff returned the second time for repairs), even for the mandated odometer reporting.

"Therefore, the plaintiff has proven that the defendant's actions were fraudulent in failing to properly record the odometer readings, refuse warranty coverage, and attempt to have her enter into other purchase contracts with the defendant to replace the car. These acts demonstrate fraudulent misconduct in the form of deceit and misrepresentation by the defendant and impacted the plaintiff. Thus, the plaintiff is entitled to the actual damages of $5435 and punitive damages in the amount of $15,000." In summarizing its decision, the court indicated that it was awarding the plaintiff "actual damages of $5435, punitive damages in the amount of $15,000 and reasonable attorney fees in accordance with count two to be awarded upon the submission to the court of an affidavit filed by [the] plaintiff's counsel and the costs as submitted by the plaintiff in the attachment to the memorandum dated September 30, 2015."[10]

On November 6, 2015, the plaintiff filed a motion for counsel fees, attached to which was an affidavit of attorney's fees in the amount of $6655.35. The plaintiff also submitted a bill of costs totaling $668.58. On November 18, 2015, the defendant filed an objection challenging the reasonableness of the requested fees and costs. That same day, the defendant timely filed the present appeal from the court's October 30, 2015 judgment.[11]

The court heard argument regarding attorney's fees on November 30, 2015, granted the plaintiff's motion, and overruled the defendant's objection. The court further awarded the plaintiff additional attorney's fees for the time spent filing and arguing the postjudgment motion. The plaintiff submitted a supplemental affidavit of attorney's fees later that day in the amount of $390, which the court granted on December 14, 2015, bringing the total award of attorney's fees to $7045.35. The defendant amended this appeal on January 4, 2016, disputing the award of attorney's fees.

Before turning to the claims raised by the defendant, it is important to take note of what has not been challenged by the defendant in the present appeal. In summarizing its arguments, the defendant suggests in its brief that if this court were to rule in the defendant's favor as to all claims, we should reverse the court's judgment "in its entirety." The defendant, however, failed to advance or adequately brief any claims on appeal regarding the court's decision holding the defendant liable under count three of the complaint for breach of the express statutory warranty and awarding compensatory damages on that count in the amount of $5435. Although the defendant states in its reply brief that such a claim was "discussed at length" in its main brief, there is no mention of this claim in the statement of issues, and the only discussion resembling a challenge to the court's finding of a breach of the express warranty comes within the defendant's discussion of the Magnuson-Moss count and contains no legal citations or references to the record. Indeed, the plaintiff did not brief issues related to the express warranty count, presumably because she did not construe the defendant's brief on appeal as challenging the court's determination on that count. Accordingly, even if the defendant were to prevail on all the claims raised and briefed, the practical effect would not be a judgment for the defendant "in its entirety," but merely a potential reduction in the overall damages award to $5435. Having noted the limits of this appeal, we turn to our discussion of the claims raised.

I

The defendant first claims that the court improperly rendered judgment in favor of the plaintiff on count one of the complaint alleging a breach of the implied warranty of merchantability because the court previously had dismissed that count pursuant to Practice Book § 15-8. We agree.

Whether the court properly rendered judgment on a previously disposed count presents a question of law over which we exercise plenary review. There is no dispute that, after the plaintiff presented her evidence at trial and rested, the defendant made an oral motion to dismiss all counts of the complaint pursuant to Practice Book § 15-8. "For the court to grant [a] motion [for judgment of dismissal pursuant to Practice Book § 15-8], it must be of the opinion that the plaintiff has failed to make out a prima facie case. In testing the sufficiency of the evidence, the court compares the evidence with the allegations of the complaint. . . . In order to establish a prima facie case, the proponent must submit evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove. . . . [T]he evidence offered by the plaintiff is to be taken as true and interpreted in the light most favorable to [the plaintiff], and every reasonable inference is to be

drawn in [the plaintiff's] favor." (Citation omitted; internal quotation marks omitted.) *Gambardella* v. *Apple Health Care, Inc.*, 86 Conn. App. 842, 846, 863 A.2d 735 (2005).

Applying that standard in the present case, the court clearly and unequivocally rendered a judgment of dismissal as to count one of the plaintiff's complaint.[12] The court stated on the record: "As to count one, the court is going to dismiss count one." It also dismissed counts five and six, indicating at the close of its oral decision that "what we have remaining is counts two, three, and four of the complaint." The trial proceeded, therefore, only as to those counts. In dismissing count one, the court indicated: "I don't think that the plaintiff has presented sufficient evidence to indicate that there's been any implied warranty of merchantability that has been in any way proven by you." Once the court had dismissed count one, it effectively was removed from the case, and the court had no authority to address the merits of that dismissed count in its final decision or to award damages on the basis of that dismissed cause of action.

It is true that a court has the authority, even sua sponte, to correct clerical errors in a prior judgment or to clarify or interpret an ambiguous judgment. *Sanzo* v. *Sanzo*, 137 Conn. App. 216, 222 n.5, 48 A.3d 689 (2012). The court may also open a judgment, although generally the court will not do so absent a motion by a party. See *Carabetta* v. *Carabetta*, 133 Conn. App. 732, 735–36, 38 A.3d 163 (2012). If the court in the present case determined that its prior dismissal of count one was somehow in error and, thus, should be opened and set aside, it never indicated this to the parties on the record prior to rendering judgment. On the basis of the record before us, we decline to construe the court's subsequent ruling on the merits as an implicit reversal sua sponte of its prior determination that the plaintiff had failed to present a prima facie case. Doing so here would unfairly prejudice the defendant, which never had an opportunity to present its own evidence in defense of count one, believing it was dismissed.

The only argument made by the plaintiff in response to this claim is that any mistake by the court in ruling on count one is harmless because the court awarded the same measure of damages with respect to count three of the complaint alleging breach of the express warranty. That does not justify or excuse the error, and speaks only to the damages awarded, not the finding of liability. Simply put, any judgment rendered on the merits of a previously dismissed count, in the absence of any proper restorative action, amounts to reversible error. The judgment for the plaintiff on count one, accordingly, is vacated.

II

Next, the defendant claims that the court improperly determined that the defendant had violated the Magnuson-Moss Act, 15 U.S.C. § 2310 (d), because the plaintiff had pleaded in count two of the complaint that the Magnuson-Moss violation was the result of the defendant's failure to comply with its obligations under the implied warranty of merchantability. It argues that any judgment for the plaintiff on count two, therefore, was logically incongruous with the court's dismissal of count one, which alleged a breach of the implied warranty of merchantability. We agree.

"Magnuson-Moss, enacted by Congress in 1975, is not limited in its application to the sale of automobiles but applies to consumer products in general. It does not require that warranty be given, but if there is a written warranty, Magnuson-Moss imposes certain requirements as to its contents, disclosures, and the effect of extending a written warranty." (Emphasis omitted.) *Szajna* v. *General Motors Corp.*, 115 Ill. 2d 294, 312–13, 503 N.E.2d 760 (1986). A Magnuson-Moss Act violation may be premised upon either the breach of an express or implied warranty or both. See 15 U.S.C. § 2310 (d) (1) (2012); see also *Sandoval* v. *PharmaCare US, Inc.*, 145 F. Supp. 3d 986, 998 (S.D. Cal. 2015) (explaining Magnuson-Moss "allows consumers to enforce written and implied warranties in federal court, borrowing state law causes of action" [internal quotation marks omitted]). If a Magnuson-Moss claim is premised solely upon a state law warranty claim, the Magnuson-Moss claim will "stand or fall" with the state law claims. *Clemens* v. *DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 and n.3 (9th Cir. 2008). Accordingly, we must first look to the pleadings to decide the scope of the plaintiff's Magnuson-Moss claim in the present case and whether the defendant was entitled to judgment on that count because of the dismissal of the associated state law claim.

"The interpretation of pleadings is always a question of law for the court . . . . [W]e long have eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension. . . . Although essential allegations may not be supplied by conjecture or remote implication . . . the complaint must be read in its entirety in

such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery." (Citations omitted; internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 536–37, 51 A.3d 367 (2012).

Turning to the complaint in the present case, we note that count one alleged a violation of the implied warranty of merchantability as expressed in this state's Uniform Commercial Code, General Statutes § 42a-2-314. Count two, alleging a violation under the Magnuson-Moss Act, immediately followed and incorporated the allegations of count one. After alleging facts necessary to invoke the protection of the federal statute, the plaintiff alleged: "[The] defendant failed to comply with its obligations under the implied warranty of merchantability, and it is liable to the plaintiff for her damages, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 2310 (d)." Thus, the reasonable and rational construction of that count is that the plaintiff's general theory of recovery with respect to the Magnuson-Moss count hinged upon the state law claim in count one, which alleged a violation of the implied warranty of merchantability. Although, on appeal, the plaintiff attempts to shift the focus away from the breach of implied warranty count and to tie the Magnuson-Moss allegations to its claim of a breach of the express warranty, there is simply no support for that in the pleadings.

The breach of express warranty claim is found in count three of the complaint. That count, however, does not incorporate any of the allegations set forth in count one or two, and makes no mention of a violation of the Magnuson-Moss Act. There are simply no allegations set forth in count three that would have alerted the court or the defendant that the plaintiff was alleging a Magnuson-Moss violation on the basis of the breach of express warranty count, which, up to that point in the complaint, had not yet been pleaded. Having elected to hinge its allegations of a Magnuson-Moss violation to the breach of implied warranty claim asserted in count one, the success or failure of the counts are inextricably tied.

In its memorandum of decision, the court summarily found for the plaintiff on the Magnuson-Moss count on the basis of its finding "that there is liability for breach of warranty . . . ." Although this finding immediately followed its ruling regarding the breach of the implied warranty of merchantability, the court did not clearly identify whether it was referring to that finding or to its later holding that the defendant breached the express

written warranty as alleged in count three. It is, however, unnecessary to resolve this ambiguity because the ruling would be improper under either scenario.

As we have explained, to the extent that the Magnuson-Moss Act violation found by the court was tied to the alleged breach of the implied warranty of merchantability, the court's dismissal of the implied warranty count for failure to make out a prima facie case should have precluded any finding that such a breach formed the basis for a Magnuson-Moss Act violation. On the other hand, if the court intended to hold that the plaintiff proved a Magnuson-Moss violation on the basis of its finding of a breach of the express warranty, that determination would be improper because the plaintiff never pleaded such a violation. See *Brochu* v. *Brochu*, 13 Conn. App. 681, 684, 538 A.2d 1093 (1988) ("[i]t is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint" [internal quotation marks omitted]). Accordingly, we agree with the defendant that the court improperly ruled in favor of the plaintiff on count two, and that portion of the judgment is reversed.

### III

The defendant next claims that the court improperly awarded the plaintiff attorney's fees in addition to compensatory damages. The defendant argues that the plaintiff was not entitled to recover her attorney's fees as a matter of law and that the amount of attorney's fees was unreasonable. We agree that the plaintiff was not entitled to recover attorney's fees.

"Ordinarily, we review the trial court's decision to award attorney's fees for abuse of discretion. . . . This standard applies to the amount of fees awarded . . . and also to the trial court's determination of the factual predicate justifying the award. . . . [If], however, a damages award is challenged on the basis of a question of law, our review is plenary." (Citation omitted; internal quotation marks omitted.) *Chicago Title Ins. Co.* v. *Accurate Title Searches, Inc.*, 173 Conn. App. 463, 496, 164 A.3d 682 (2017).

"The general rule of law known as the American rule is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . This rule is generally followed throughout the country. . . . Connecticut adheres to the American rule. . . . There are few exceptions. For example, a specific contractual term may provide for the recovery of attorney's fees and costs . . . *or a statute may confer such rights*." (Emphasis added; internal quotation marks omitted.) *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.*, 282 Conn. 576, 582, 923 A.2d 697 (2007).

In the present case, the court's award of attorney's fees was a component of the damages for the purported

Magnuson-Moss Act violation as alleged in count two. That act contains an express statutory exception to the American rule. See *Chrysler Corp.* v. *Maiocco*, 209 Conn. 579, 588, 552 A.2d 1207 (1989) ("Magnuson-Moss [Act] gives authority to the court to grant attorney's fees in a civil suit").[13]

Because we have determined in part II of this opinion, however, that the court improperly rendered judgment in favor of the plaintiff on count two, the plaintiff cannot reasonably rely upon that statutory grant of authority as a legal basis for upholding the court's award of attorney's fees with respect to count two. Further, attorney's fees also may be awarded at the discretion of the court for a CUTPA violation, the court dismissed that count of the complaint. The plaintiff has not cited in her brief to this court any alternative statutory or common-law basis for an award of attorney's fees with respect to count two. Accordingly, the court's award of attorney's fees must be set aside. Because we determine that the court improperly awarded attorney's fees to the plaintiff as a matter of law, at this juncture, we need not reach the defendant's additional argument that the amount of attorney's fees awarded by the court was unreasonable.

IV

The defendant next claims that the trial court incorrectly concluded that the defendant committed fraud because the plaintiff failed to present clear and convincing evidence that the defendant made a false representation or had the requisite intent to defraud the plaintiff. We are not persuaded.

"Under the common law . . . it is well settled that the essential elements of fraud are: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." (Internal quotation marks omitted.) *Leonard* v. *Commissioner of Revenue Services*, 264 Conn. 286, 296, 823 A.2d 1184 (2003). "It is well established that common law fraud must be proven by a higher standard than a fair preponderance of the evidence. This middle tier standard has been described as 'clear and satisfactory evidence' and as 'clear, precise and unequivocal evidence.' " (Footnote omitted.) *Kilduff* v. *Adams, Inc.*, 219 Conn. 314, 327–28, 593 A.2d 478 (1991); see also *Wieselman* v. *Hoeniger*, 103 Conn. App. 591, 595 n.7, 930 A.2d 768 (2007) (describing burden of proof in common-law fraud cases as requiring "clear and convincing evidence"), cert. denied, 284 Conn. 930, 934 A.2d 245 (2007).

"Fraud and misrepresentation cannot be easily defined because they can be accomplished in so many different ways. They present, however, issues of fact. . . . The trier of facts is the judge of the credibility of

the testimony and of the weight to be accorded it. . . . When the trial court finds that a plaintiff has proven all of the essential elements of fraud, its decision will not be reversed or modified unless it is clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . [A]s a reviewing court [w]e must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude. . . . The weight to be given to the evidence and to the credibility of witnesses is solely within the determination of the trier of fact. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *Cohen* v. *Roll-A-Cover, LLC*, 131 Conn. App. 443, 449–51, 27 A.3d 1, cert. denied, 303 Conn. 915, 33 A.3d 739 (2011).

In reviewing whether a plaintiff has proven her case by clear and convincing evidence, we are cognizant that the trier of fact "may draw reasonable, logical inferences from the facts proven as long as [it does] not resort to speculation and conjecture. . . . Insofar as circumstantial evidence can be and is routinely used to meet the higher standard of proof in a criminal prosecution, so can it be used in a case . . . [in which] the applicable standard is that of clear and convincing proof." (Citations omitted; emphasis added.) *In re Juvenile Appeal (85-2)*, 3 Conn. App. 184, 193, 485 A.2d 1362 (1985). With these principles in mind, we turn to the defendant's arguments.

The defendant first argues that the court improperly found that the defendant made a false statement by failing to disclose an accurate odometer reading because the court had no evidence before it from which to determine the vehicle's true mileage either at the time of sale or when the vehicle was delivered. Accordingly, the defendant argues, there was no evidence to refute the mileage as stated on the sales agreement or the odometer statement. We disagree and conclude that the court's finding is supported by evidence in the record and, thus, is not clearly erroneous.

Although the defendant is correct that, in her testimony at trial, the plaintiff could not recall the precise odometer readings she had observed, she did testify that the odometer reading at the time of delivery on October 17, 2012, was higher than what she observed when test-driving the vehicle. The court was entitled

to credit that testimony. The court also had evidence that the same mileage number was recorded on documents despite the reasonable inference that the mileage should have increased as a result of subsequent test drives by the plaintiff and by the defendant's service department.

The defendant also argues that there was no evidence from which the court could have found that the defendant intended to induce the plaintiff to rely upon the inaccurately recorded mileage in order to influence her decision to purchase the Saab. We disagree.

The court found, on the basis of the evidence presented and its assessments of the credibility of the witnesses, including its negative view of the testimony provided by the defendant's service department representative, that the vehicle's mileage was not accurately recorded by the defendant's representatives on paperwork. Rather, the court found that the mileage was simply carried over in "cookie cutter" fashion from one document to another. The court also found that the defendant's recording failures were not merely sloppy but a deliberate attempt to record lower mileage, and that this deceit and misrepresentation were done to the detriment of the plaintiff because they impacted her ability to take full advantage of the warranty period. In considering whether there was clear and convincing evidence of fraud, the court, as the trier of fact, was permitted to draw reasonable inferences, including that the defendant's actions were intended to induce the plaintiff's reliance upon its representations and that she purchased the vehicle believing the sale included warranty coverage for 3000 miles, when in fact, due to the defendant's actions, the vehicle warranty would expire after fewer miles, lowering the value of the vehicle and reducing the defendant's potential liability for repairs.[14]

We conclude, on the basis of our review of the record, including the court's memorandum of decision, that the court's determination that the defendant engaged in fraud was legally and logically correct and supported by the evidence adduced at trial. The defendant's claim to the contrary, therefore, fails.

V

Finally, the defendant claims that the court improperly awarded the plaintiff punitive damages of $15,000. We agree.

"Punitive damages may be awarded upon a showing of fraud." *Plikus* v. *Plikus*, 26 Conn. App. 174, 180, 599 A.2d 392 (1991). Common-law punitive damages, however, are limited under well established Connecticut law "to litigation expenses, such as attorney's fees, less taxable costs." *Hylton* v. *Gunter*, 313 Conn. 472, 484, 97 A.3d 970 (2014).

In the present case, the court awarded $15,000 in

punitive damages under the fraud count without explaining the factual basis for that order. The court had no evidence before it regarding the total litigation expenses of the plaintiff. Although the plaintiff had submitted an affidavit from the plaintiff's attorney claiming attorney's fees of nearly $7000, the plaintiff did not provide any evidence from which the court reasonably could have inferred an additional $8000 in nontaxable costs. In other words, there is simply no evidentiary or legal basis supporting the court's award of $15,000 in punitive damages. Accordingly, although we conclude that some award of punitive damages was permissible in conjunction with the fraud count, a new hearing in damages is necessary to determine the actual amount of the plaintiff's litigation expenses, which, in addition to reasonable attorney's fees, will include other nontaxable costs.

The judgment is vacated as to count one and reversed as to count two, including the award of attorney's fees, and the case is remanded with direction to render judgment in favor of the defendant as to those counts; the award of punitive damages in connection with count four is vacated and the case is remanded with direction to conduct a new hearing in damages consistent with this opinion; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The court previously dismissed counts five and six, which alleged a revocation of acceptance and a violation of the state's unfair trade practices act, General Statutes § 42-110a et seq. The plaintiff has not appealed or cross appealed from the court's judgment of dismissal.

[2] For clarity and ease of analysis, we address the defendant's claims in an order different from how they were presented in the defendant's brief.

[3] The plaintiff never provided any testimony quantifying how many additional miles she believed the vehicle had been driven.

[4] Although the court states at several points in its memorandum of decision that the express warranty had a durational term of three months, that finding is not supported by the record, including the exhibit cited by the court. That discrepancy, however, had no bearing on the court's analysis or on our review on appeal.

[5] Section 2310 (d) of title 15 of the 2012 edition of the United States Code provides in relevant part: "(1) . . . a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief—

"(A) in any court of competent jurisdiction in any State . . . .

"(2) If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate. . . ."

[6] General Statutes § 42-221 (b) provides in relevant part: "Each contract entered into by a dealer for the sale of a used motor vehicle which has a cash purchase price of five thousand dollars or more shall include an express warranty, covering the full cost of both parts and labor, that the vehicle is mechanically operational and sound and will remain so for at least sixty days or three thousand miles of operation, whichever period ends first, in the absence of damage resulting from an automobile accident or from misuse of the vehicle by the consumer. . . ."

[7] General Statutes § 42a-2-608 (2) sets forth the conditions that must be met before a revocation of acceptance following the discovery of a defect will be valid, including that a revocation is not effective until "the buyer notifies the seller of it" and that such a revocation must be made "within a reasonable time" after the buyer discovers or should have discovered the defect at issue.

[8] Practice Book § 15-8 provides: "If, on the trial of any issue of fact in a civil matter tried to the court, the plaintiff has produced evidence and rested, a defendant may move for judgment of dismissal, and the judicial authority may grant such motion if the plaintiff has failed to make out a prima facie case. The defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made."

"A prima facie case . . . is one sufficient to raise an issue to go to the trier of fact. . . . In order to establish a prima facie case, the proponent must submit evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove." (Internal quotation marks omitted.) *Chen* v. *Hopkins School, Inc.*, 148 Conn. App. 543, 548, 86 A.3d 482 (2014).

[9] The plaintiff's theory, in part, is that the defendant was on notice of her warranty claim when she first brought the vehicle into the dealership on Saturday, December 8, 2012, but was told the repair shop was closed, a fact disputed by the defendant. According to the plaintiff, the car was under the mileage limit on Saturday, but she added more than 200 miles commuting back and forth to work before the car could be seen by the defendant the following Monday.

[10] The record before us does not contain a bill of costs attached to the plaintiff's posttrial memorandum.

[11] We note that, in *Paranteau* v. *DeVita*, 208 Conn. 515, 544 A.2d 634 (1988), our Supreme Court adopted a "bright-line rule"; id., 522; that "a judgment on the merits is final for purposes of appeal even though the recoverability or amount of attorney's fees for the litigation remains to be determined." Id., 523.

[12] "A motion for judgment of dismissal has replaced the former motion for nonsuit for failure to make out a prima facie case." (Internal quotation marks omitted.) *Thomas* v. *West Haven*, 249 Conn. 385, 391, 734 A.2d 535 (1999), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000). The remedy afforded in response to a successful motion brought pursuant to Practice Book § 15-8 is accordingly more akin to a directed judgment on the merits in favor of the proponent of the motion. Although it appears to be somewhat of a misnomer to call the resulting judgment a judgment of dismissal, we use that terminology nevertheless because it comports with the language used in our rules of practice.

[13] Specifically, 15 U.S.C. § 2310 (d) (2) provides in relevant part that a prevailing plaintiff "may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate."

[14] To the extent that the defendant's arguments can be construed as challenging whether the court had sufficient evidence from which to find that the plaintiff purchased the vehicle in reliance on the defendant's misrepresentations, we deem any such claim abandoned for lack of adequate briefing. "We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *Clelford* v. *Bristol*, 150 Conn. App. 229, 233, 90 A.3d 998 (2014).